**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| SERGEI VASENIN, KEMOYE MUSLAR, and CYNTHIA ACEVEDO, and a class of similarly situated people,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, in his official capacity, et al.,<br><br>Defendants. | Case No. 3:26-cv-01582-SJF<br>Mag. Judge Scott J. Frankel<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ADDRESSING INADEQUATE MEDICAL AND MENTAL HEALTH CARE**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, and having reviewed the Parties' filings and the argument of counsel, the Court finds that Plaintiffs and members of the putative Class have demonstrated that they are likely to prevail on the merits of their claims, that they have suffered and will suffer irreparable harm if the Court does not issue relief, that the balance of equities tips in their favor, and that the public interest lies in issuing a preliminary injunction.

Accordingly, the Court HEREBY ORDERS:

1. Plaintiffs' Motion for Preliminary Injunction is GRANTED.

2. Within 14 days, Defendants are ordered to ensure the following:

   a. **Health Intake Screenings and Assessments**

      i. A comprehensive and documented health intake screening, performed by a registered nurse, nurse practitioner, physician's assistant, or medical doctor, as soon as possible, but no later than 12 hours after a detained immigrant's arrival at the Miami Correctional Facility. Detained immigrants who display indications of possible urgent medical or mental health concerns upon arrival shall be prioritized in the intake screening process. The health intake screening must be sufficient to: (1) identify and make urgent and emergent referrals for necessary treatment of those with physical or mental illnesses or injuries; (2) ensure continuity of treatment and medication; (3) identify the need for any necessary self-harm and suicide prevention precautions; and (4) recognize, isolate, and treat those with communicable diseases;[1]

      ii. Defendants shall initiate reasonable efforts within 24 hours of intake to obtain relevant medical records from prior healthcare providers, hospitals, correctional institutions, detention facilities, pharmacies, and other sources necessary to ensure continuity of care;[2]

      iii. A comprehensive and documented health assessment performed by a primary care provider no later than 14 days after a person's arrival;[3]

   **b. Confidentiality and Language Assistance**

      i. Sufficient confidential and clinically appropriate space for all healthcare encounters, including healthcare screening during intake, with audio and

---

[1] *See L.T. v. U.S. Immigr. & Customs Enf't*, No. 5:26-cv-00322, 2026 WL 2678270, at *2 ¶ 4.a.i (C.D. Cal. Sept. 11, 2026); *Gomez Ruiz v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-09757, 2026 WL 391924, at *1 ¶1.b (N.D. Cal. Feb. 10, 2026); *Angye v. U.S. Immigr. & Customs Enf't*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.b (W.D. Tex. Oct. 15, 2026); U.S. Immigr. & Customs Enf't, *National Detention Standards* (Revised 2026) ("2026 NDS"), 4.3, II.D.1, https://www.ice.gov/doclib/detention-standards/2026/nds2026.pdf; *see* Ex. 40, Dr. Kariko Decl. at 12–15; Ex. 41, Dr. Stewart Decl. ¶¶ 34–42, 43–49.

[2] *See* Ex. 40, Dr. Kariko Decl. at 12–13, 14.

[3] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.c; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.e; 2026 NDS 4.3, II.F; Ex. 40, Dr. Kariko Decl. at 12; Ex. 41, Dr. Stewart Decl. ¶ 42.

visual privacy from non-health care staff and detained individuals, including other detained individuals experiencing simultaneous healthcare screenings;[4]

ii. Language assistance, through professional in-person, telephonic, or video interpretation and translation services, or bilingual personnel, shall be provided to any detained individual with limited English proficiency (LEP) during the provision of medical and mental health services;[5]

**c. Medication and Treatment Continuity**

i. Each person taking prescription medication or receiving a therapeutic diet prior to arriving at Miami Correctional is automatically referred for evaluation by a provider, with evaluations for bridge medicine occurring within 24 hours;[6]

ii. All detained immigrants receiving critical medications are identified and medication dispensation is tracked, including but not limited to anticonvulsants, psychotropic medications, insulin and other diabetes-related medications, anticoagulants, antiretroviral therapy, antibiotics, and other clinically necessary medications;[7]

iii. Medication administration is monitored by qualified medical providers and follow-up appointments are scheduled as clinically appropriate;[8]

iv. Missed or delayed doses are promptly investigated and addressed by qualified medical providers;[9]

---

[4] *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.b; 2026 NDS 4.3, II.B; Ex. 40, Dr. Kariko Decl. at 30–31, 33, 50, 62; Ex. 41, Dr. Stewart Decl. ¶¶ 36, 41, 84–85, 88.

[5] 2026 NDS 1.1; Ex. 40, Dr. Kariko Decl. at 43–46, 50; Ex. 41, Dr. Stewart Decl. ¶¶ 40, 50, 89–90.

[6] *Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.f; *L.T.*, 2026 WL 2678270, at *2 ¶ 4.a.iv.; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.g; Ex. 40, Dr. Kariko Decl. at 12–15, 33–38; Ex. 41, Dr. Stewart Decl. ¶¶ 44–46.

[7] Ex. 40, Dr. Kariko Decl. at 34–38, 58.

[8] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.f; *L.T.*, 2026 WL 2678270, at *2 ¶ 4.a.iv.; Ex. 40, Dr. Kariko Decl. at 33–38; Ex. 41, Dr. Stewart Decl. ¶¶ 71–82.

[9] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶1.f; *L.T.*, 2026 WL 2678270, at *2 ¶ 4.a.iv.; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.g; Ex. 40, Dr. Kariko Decl. at 8, 33–38; Ex. 41, Dr. Stewart Decl. ¶¶ 80–82.

**d. Health Care Requests**

i. All health care requests, reports of worsening symptoms, medication concerns, and urgent complaints shall be reviewed and triaged by a registered nurse within 24 hours;[10]

ii. If a detainee requires emergency medical care, the first responding officer shall immediately contact a health care practitioner;[11]

iii. Patients shall receive appropriate clinical evaluations and treatment of their requests as determined by the triage nurse;[12]

**e. Chronic Care and Urgent Specialty Referrals**

i. Patients shall receive clinically appropriate chronic care, including for hypertension, hyperlipidemia, lung-related diseases, diabetes, epilepsy, and HIV, including follow-up of identified health concerns, medically necessary specialty care, appropriate medication management, and ongoing monitoring of detainees with significant medical needs;[13]

ii. A process for identifying, tracking, and escalating urgent and emergent specialty referrals to ensure that medically necessary consultations occur within clinically appropriate timeframes and that specialty recommendations are promptly reviewed and implemented;[14]

f. **Mental Health**

i. Any detained immigrant referred for mental health treatment is triaged for any emergency needs and receives an evaluation by a qualified mental health provider based on level of clinical acuity, but in no case longer than

---

[10] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.h; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.h; 2026 NDS 4.3, II.I; Ex. 40, Dr. Kariko Decl. at 15–16, 17–21, 53–55; Ex. 41, Dr. Stewart Decl. ¶¶ 61–65.

[11] 2026 NDS 4.3, II.K; 4.5, II.D; *see* Ex. 40, Dr. Kariko Decl. at 39–43; Ex. 41, Dr. Stewart Decl. ¶¶ 128, 130–134.

[12] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.h; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.h; 2026 NDS 4.3, II.I; Ex. 40, Dr. Kariko Decl. at 15–21; Ex. 41, Dr. Stewart Decl. ¶ 63.

[13] *L.T.*, 2026 WL 2678270, at *2 ¶ 4.a.ii.; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.k; 2026 NDS 4.3, II.A; Ex. 40, Dr. Kariko Decl. at 21–25, 26–30, 31–33; Ex. 41, Dr. Stewart Decl. ¶¶ 71–82, 84–85.

[14] Ex. 40, Dr. Kariko Decl. at 12–15, 16-21, 26–29, 39–43, 58; Ex. 41, Dr. Stewart Decl. ¶¶ 33, 35–36, 42, 61, 63.

five days after the referral. An emergent referral must be seen as soon as possible, and an urgent referral must be evaluated within one day;[15]

ii. For any detained immigrant referred for mental health treatment, a qualified mental health provider shall develop an overall treatment/management plan that includes regular access to psychiatric providers and mental health therapists as clinically appropriate;[16]

g. **Solitary Confinement and Serious Mental Illness/Suicide Risk**

i. For purposes of this order, Solitary Confinement is defined as any type of housing, including segregation, SMU, or isolation, that results in a detained immigrant being confined to their cell for 22 hours or more in a 24-hour period, regardless of whether held in a cell alone or with another person and regardless of any particular label Defendants give to the detained immigrant's status.[17]

ii. **Placement:** Defendants are enjoined from placing detained immigrants in Solitary Confinement if they have a serious mental illness or present a risk of suicide;[18]

iii. A psychiatrist shall conduct a face-to-face psychiatric evaluation of all immigration detainees in segregation as of the date of this Order to determine suitability for continued segregation placement, consistent with the criteria set forth above;[19]

---

[15] *L.T.*, 2026 WL 2678270, at *2 ¶ 4.a.ii.; 2026 NDS 4.3, II.S.2; Ex. 41, Dr. Stewart Decl. ¶¶ 25, 42, 36, 131–132.
[16] *L.T.*, 2026 WL 2678270, at *2 ¶ 4.a.ii.; 2026 NDS 4.3, II.S.2; Ex. 41, Dr. Stewart Decl. ¶¶ 33, 42, 48, 72–73, 83–85.
[17] *See Solitary confinement*, Nat'l Inst. of Corr., https://nicic.gov/resources/tags/solitary-confinement (last visited Nov. 18, 2026) ("Solitary confinement is a form of imprisonment in which an inmate is isolated from human contact, typically in a small cell for 22 to 24 hours a day."); *see also Jensen v. Thornell*, Case No. 12-cv-601, 2023 WL 2838040, at *26 (D. Ariz. Apr. 7, 2023).
[18] *L.T.*, 2026 WL 2678270, at *2 ¶ 3; Ex. 41, Dr. Stewart Decl. ¶¶ 104–109, 127; *see* 2026 NDS 2.9, II.M.1 (must look into all available alternatives and provide routine evaluations from mental health professional); *Dunn v. Comm'r, Alabama Dep't of Corr.,* 179 F.4th 1277, 1316–317 (11th Cir. 2026) (affirming district court entry of injunction prohibiting DOC from placing those with serious mental illness in segregation); *Jensen*, 2023 WL 2838040, at *27.
[19] Ex. 41, Dr. Stewart Decl. ¶¶ 114–116.

iv. **Health Evaluations and Effect on Placement:** As of the date of this Order, prior to initiating a placement in segregation, a psychiatrist shall conduct a face-to-face psychiatric evaluation that includes an assessment of mental illness and risk of suicide or self-harm to determine suitability of an immigration detainee's placement in Solitary Confinement.[20]

v. Qualified medical and mental health providers shall provide daily face-to-face well checks for any detained immigrant in Solitary Confinement to monitor the detained immigrant's physical and mental health status, identify signs of deterioration, and recommend additional treatment as appropriate;[21]

vi. Both health care staff and security staff shall ensure continued access to all medication and mental health care services;[22]

vii. Detained immigrants with medical or mental illness, identified as being at risk of suicide, or on a hunger strike shall be removed from Solitary Confinement if medical staff determine that isolation has resulted in a deterioration in the detained immigrant's medical or mental health;[23]

**h. Suicide Prevention**

i. An evidence-based, validated suicide screening tool shall be used on all new arrivals;[24]

ii. Security staff shall immediately refer any detained immigrants identified as at risk of suicide or self-harm to a mental health provider. An evaluation shall take place as soon as possible, but no later than 24 hours. Until this

---

[20] 2026 NDS 2.9, II.M; Ex. 41, Dr. Stewart Decl. ¶¶ 109–112, 114–117.
[21] Ex. 41, Dr. Stewart Decl. ¶¶ 112–116; *see* 2026 NDS 2.9, II.M.
[22] Ex. 41, Dr. Stewart Decl. ¶¶ 74, 81, 91–93, 99, 113–125.
[23] *L.T.*, 2026 WL 2678270, at *2 ¶ 3; 2026 NDS 2.9, II.M.; Ex. 40, Dr. Kariko Decl. at 20–21; Ex. 41, Dr. Stewart Decl. ¶¶ 104–12, 125.
[24] 2026 NDS 4.5, II.C; Ex. 41, Dr. Stewart Decl. ¶¶ 38, 129.

evaluation takes place, security staff shall place the detained immigrant in a secure environment on constant (one-to-one) visual observation;[25]

iii. Detained immigrants placed on suicide precautions shall be reevaluated by a qualified mental health provider (or a health care practitioner) daily to assess any changes that indicate a need for change in the level of supervision (i.e., constant watch, close observation, or removal from suicide precautions);[26]

iv. Suicide prevention protocols shall be consistently implemented and subject to clinical oversight;[27]

**i. Emergency Response**

i. Security staff and health care staff shall be sufficiently trained and equipped with functional emergency equipment to respond to health-related emergencies within a 4-minute response time;[28]

j. **Medical and Mental Health Transfer Provision**

i. If a detained immigrant's medical or mental health needs or developmental or intellectual disability needs exceed the treatment capability of the facility, a referral for an outside hospital or mental health facility shall be initiated and the facility shall notify ICE/ERO of the need for a transfer as early as possible;[29]

**k. Staffing**

i. Adequate health care staffing and clinical oversight to timely meet the needs of the population, ensuring a reasonable staff-to-detainee ratio for all

---

[25] 2026 NDS II.D; Ex. 41, Dr. Stewart Decl. ¶ 132.
[26] 2026 NDS 4.5, II.D; Ex. 41, Dr. Stewart Decl. ¶¶ 132, 137.
[27] 2026 NDS 4.5; Ex. 41, Dr. Stewart Decl. ¶¶ 126–32, 142.
[28] *Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.e; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.f; 2026 NDS 4.3, I, II.K; Ex. 40, Dr. Kariko Decl. at 39–43; *see* Ex. 41, Dr. Stewart Decl. ¶¶ 128–132, 142.
[29] 2026 NDS 4.3, I, II.S.2; Ex. 40, Dr. Kariko Decl. at 62; Ex. 41, Dr. Stewart Decl. ¶¶ 104, 108, 115, 129, 151.

medical and mental health disciplines as well as custody staff necessary for facilitating movement in the facility;[30]

**Independent Monitor**

3. Pursuant to Federal Rule of Evidence 706 and the Court's equitable powers, the Court will appoint a qualified, independent, third-party expert ("Health Monitor") to ensure compliance with Paragraph 2 of this Order, including through review of medical records and on-site inspection and interviews with patients and staff.[31]
4. The parties will meet and confer regarding the selection of the Health Monitor and will file a written proposal within 14 days of this Order identifying the proposed monitor. If the Parties are unable to agree upon the selection, the Parties shall each submit to the Court the names of no more than two qualified candidates who have the requisite knowledge and experience. Each Party will have seven (7) days to comment on the qualifications of any one or more of the Parties' candidates. The Court will then appoint the Health Monitor. Defendants are ordered to pay the Health Monitor's reasonable rate.[32]
5. The Health Monitor may retain such staff and/or consultants as appropriate to assist in the performance of their duties.[33]
6. **Monitoring Duties:** The Health Monitor shall monitor compliance with Paragraph 2 of this Order and issue quarterly reports for the Court and the parties detailing their findings and recommendations. These status reports shall be publicly filed with the Court.[34]
7. **Permissions:** Defendants must ensure that the Health Monitor is able to conduct unannounced, independent inspections at Miami Correctional, including accessing all areas where class members may be found and all areas relevant to the provision of medical care, interviewing staff, and interviewing class members. If any key staff are not

---

[30] *See L.T.*, 2026 WL 2678270, at *2 ¶ 4.a.; *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 2.a; Ex. 40, Dr. Kariko Decl. at 51–58; Ex. 41, Dr. Stewart Decl. ¶¶ 143, 150–151.

[31] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 2; *L.T.*, 2026 WL 2678270, at *3 ¶ 5.a.; *Angye*, ECF No. 52-1 ¶ 5; Ex. 40, Dr. Kariko Decl. at 61–62; Ex. 41, Dr. Stewart Decl. ¶ 153.

[32] *L.T.*, 2026 WL 2678270, at *3 ¶ 5.a; *Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 2.

[33] *See, e.g.*, *L.T.*, 2026 WL 2678270, at *3 ¶ 5.

[34] *Angye*, Case No. 3:26-cv-01515, ECF No. 52-1 ¶ 8.

available on the date(s) of the site visit, they will be made available to the Health Monitor via videoconferencing within two weeks of the site visit's conclusion, subject to availability due to scheduled leave.[35] Defendants must also ensure that the Health Monitor has reasonable access to relevant physical and electronic records. This access to records and to the electronic health care system shall extend to up to one additional team member.

8. **Duration:** The Health Monitor will be appointed until (a) this preliminary injunction is dissolved by this Court or an appellate court, (b) a permanent injunction is entered, (c) the Health Monitor resigns or is replaced by the Court with a new Health Monitor, or (d) this action is dismissed.[36]

9. **Reporting System:** Defendants are ordered to ensure there is a process by which detained immigrants can confidentially submit complaints or comments directly to the Health Monitor. [37]

10. **Ex Parte Communications:** The Health Monitor is permitted to engage in *ex parte* communications as follows:

    a. **The Court:** The Health Monitor is permitted to confer *ex parte* with the Court regarding any issue arising under or relating to the preliminary injunction order. All communications will be privileged and are not subject to discovery.[38]

    b. **The Parties:** The Health Monitor is allowed to communicate *ex parte* with the parties' counsel and experts relating to the performance of their duties.[39]

    **c. Class Members, Class Member Representatives, Miami Correctional facility staff:** The Health Monitor is allowed to communicate *ex parte* with class

[35] *See L.T.*, 2026 WL 2678270, at *3 ¶ 5.d; *Angye*, ECF No. 52-1 ¶ 9.a.
[36] *See L.T.*, 2026 WL 2678270, at *4 ¶ 5.g; *Angye*, ECF No. 52-1 ¶ 10.
[37] *See L.T.*, 2026 WL 2678270, at *4 ¶ 5.h; *Angye*, ECF No. 52-1 ¶ 11.a.
[38] *See L.T.*, 2026 WL 2678270, at *4 ¶ 5.j.1.
[39] *See L.T.*, 2026 WL 2678270, at *4 ¶ 5.j.2.

members[40] or their representatives as well as Miami Correctional facility staff relating to the issues arising under or relating to the preliminary injunction order.

11. **Class Members or Their Representatives:** Defendants shall ensure that the Health Monitor is able to speak with the class members or their representatives in private, both in-person and by video. The parties must meet and confer to draft a notice that will be disseminated to detained immigrants in the Miami Correctional Facility. The notice must include the Health Monitor's contact information, including their name and email, so that a class member or their representative may report any compliance issues with the preliminary injunction order.[41]

**Plaintiffs' Counsel**

12. Plaintiffs' counsel, together with Plaintiffs' experts, interpreters, and a photographer (with photographic equipment), shall be permitted to inspect, survey, and photograph Miami Correctional at least once every 3 months until further order of the Court, until Defendants have come into compliance with all of the provisions of this Order. Defendants may not interfere with such inspections or impede access to portions of the facility used for detainee operations. Plaintiffs' counsel need not announce these inspections and must be permitted to enter the facility within an hour of arriving for such an inspection.[42] Plaintiffs' counsel shall be permitted to bring into the facility and use laptop computers and cellular telephones in order to assist in their inspection.
13. Plaintiffs' counsel and their medical expert shall have read-only access to the electronic health care system at Miami Correctional.[43]
14. Plaintiffs' counsel may request reasonable documents as necessary to monitor compliance with this Order.

---

[40] *See L.T.*, 2026 WL 2678270, at *4 ¶ 5.j.3.
[41] *See L.T.*, 2026 WL 2678270, at *4 ¶ 5.j.3.
[42] *Angye*, ECF No. 52-1 ¶ 13.
[43] *Angye*, ECF No. 52-1 ¶ 14.

15. Plaintiffs' counsel may bring individual instances of non-compliance with this Order to the attention of counsel for Defendants, the Health Monitor, and/or the Court. Defendants are ordered to issue a substantive, written response to Plaintiffs' counsel within 14 days of receiving notice of any alleged non-compliance.[44]

**Retaliation**

16. Defendants are enjoined from retaliating in any form against the named Plaintiffs, any declarant, or any class member in their immigration proceedings or in any other capacity for asserting their constitutional or statutory rights.[45]

**Bond**

17. Pursuant to Federal Rule of Civil Procedure 65(c), the Court conditions the issuance of this preliminary injunction on the posting of a bond or other security in the amount of ten dollars.[46]

**IT IS SO ORDERED.**

Dated:______________________ ________________________________

Hon. Scott J. Frankel
United States Magistrate Judge

---

[44] *Angye*, ECF No. 52-1 ¶ 16.
[45] *See L.T.*, 2026 WL 2678270, at *5 ¶ 5.j.4; *Angye*, ECF No. 52-1 ¶ 17; 2026 NDS 6.3, II.O; *see also Mercado v. Mullin*, No. 25-cv-6568, 2026 WL 2969657, at *3 ¶ 12 (S.D.N.Y. Oct. 2, 2026); 2026 NDS 3.1, II.A.2.
[46] Fed. R. Civ. P. 65(c); *Mercado v. Noem*, 800 F. Supp. 3d 526, 580 (S.D.N.Y. 2025).